IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE BALDWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  2:05cv0754-VPM |
| ) | [WO] |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Willie Mae Baldwin ["Baldwin"] has filed this action seeking review of a final decision by the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. # 1, p. 1).  Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be reversed and remanded.

**I.   PROCEDURAL BACKGROUND AND FACTS**

Baldwin filed for supplemental security income benefits and disability insurance benefits in May and June of 2003, respectively (R. 70-72; 331-34).  Although she originally alleged that she had become disabled as of 13 January 1995, she later amended her application to reflect an onset date of 27 May 2003 (R. 356; 363).

On paperwork completed in support of her initial application, Baldwin described the condition causing her disability as cirrhosis of the liver and confusion (R. 76).  On

subsequent paperwork, she described herself as having cirrhosis, high blood pressure and diabetes and as being "nauseated all of the time. My feet, legs and abdomen are swollen all of the time due to my condition. I have stomach and feet pain. I cannot stand or sit for long periods of time" (R. 85). At an administrative hearing, in response to a request to describe the "impairment or physical condition" that prevents her from working, she stated, "The swelling on my feet and this knot in my stomach. It makes me sick. If I stand too long, my feet swell" (R. 364).

Baldwin's application was denied initially (R. 46-50), and a hearing before Administrative Law Judge ["ALJ"] Steven L. Carnes resulted in an unfavorable decision (R. 15-41). The Social Security Administration's Appeals Council denied Baldwin's request for review, rendering the ALJ's opinion the final decision of the Commissioner. Baldwin then filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 416.912(a) (2000).[2]

---

[1]   In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

[2]The court limits its citations to those regulations governing the administration of Title XVI of the Social Security Act because the ALJ concluded that Baldwin did not qualify for insured status under Title II, and Baldwin does not challenge this conclusion.

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment that has lasted or is expected to last 12 months or more. §§ 416.909, 416.920(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations." §§ 416.945(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of his past relevant work. §§ 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 416.920(a)(4)(v), 416.960(c).

B.      *Application of the Standard: The ALJ's Findings*

After an exhaustive review of the evidence in the record and the relevant law, the ALJ made the following findings:

1. The claimant met the Title II disability insured status requirements of the Social Security Act on January 13, 1995, the date the claimant originally stated that she became unable to work.
2. The claimant by and through her attorney moved to amend her disability onset date from January 13, 1995, to May 27, 2003. This motion was granted.

3. The claimant's Title II disability insured status expired on September 30, 1996. Therefore, the claimant does not meet the insured status requirements for Title II disability benefits.

4. The claimant has not engaged in substantial gainful activity since the amended onset date.

5. The claimant has "severe" impairments including history of chronic liver disease, borderline intellectual functioning, alcohol induced dementia, depression, reactive airway disease, hepatomegaly, diabetes mellitus with retinopathy and neuropathy, incisional hernia, and panic disorder.

6. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

7. The claimant's allegations of pain and functional limitations are not credible.

8. The claimant retains the residual functional capacity to perform light work, with a sit/stand option with the following limitations/considerations: she can frequently use her hands for simple grasping, pushing and pulling of arm controls, and for fine manipulation; she can never use her legs for pushing and pulling of leg controls; she can occasionally stoop, crouch, kneel, crawl, climb and balance; she can frequently reach overhead; she can never work around unprotected heights; she can occasionally work around moving machinery and operate

   motor vehicle equipment, exposure to marked changes in temperature and humidity; she experiences a moderate degree of pain; she has a mild degree of limitation in her ability to respond appropriately to supervisors; she has a mild degree of limitation in her ability to respond appropriately to co-workers; she has a mild degree of limitation in her ability to respond appropriately to customers or other members of the general public; she has a mild degree of limitation in her ability to use judgment in simple one or two step work-related decisions; she has a marked degree of limitation in her ability to use judgment in detailed or complex work-related decisions; she has a moderate degree of limitation in her ability to deal with changes in a routine work setting; she has a mild degree of limitation in her ability to understand, remember, and carry out simple, one and two-step instructions; she has a marked degree of limitation in her ability to understand, remember, and carry out detailed or complex instructions; she has a moderate degree of limitation in her ability to maintain attention, concentration or pace for periods of at least two hours; she has a mild degree of limitation in her ability to maintain social functioning and she has a mild degree of limitation in her ability to maintain activities of daily living.

9.  The claimant cannot perform any past relevant work.

10.  The claimant was 37 years old as of the alleged onset date, and she is now 48 years old.

11.  The claimant has a 9th grade education.

12.  The claimant has not acquired skills that would transfer to other jobs within the residual functional capacity set out above.

13.  If the claimant has the exertional capacity to perform the full range of light work, 20 CFR 416.969 and Medical-Vocational Rule 202.17, 20 CFR Part 404, Table No. 2 to Appendix 2 of Subpart P would direct a conclusion

>    that the claimant is "not disabled."
>
> 14. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision-making and the vocational expert's testimony, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: Garment Sorter with 2,000 jobs regionally and 500,000 jobs nationally, Parking Lot Attendant with 1,000 jobs regionally and 400,000 jobs nationally, and Factory Hand Worker with 9,000 jobs regionally and 500,000 jobs nationally.
>
> 15. Even if the claimant had the exertional capacity to perform the full range of only sedentary work, 20 CFR 416.969 and Medical-Vocational Rule 201.25, 20 CFR Pasrt 404, Table No. 1 to Appendix 2 of Subpart P would direct a conclusion that the claimant is "not disabled."
>
> 16. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision-making and the vocational expert's testimony, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: Ticket Seller with 10,000 jobs regionally and 400,000 jobs nationally, Parking Lot Attendant with 1,000 jobs regionally and 400,000 jobs nationally, and Factory Hand Worker with 1,000 jobs regionally and 300,000 jobs nationally.
>
> 17. The claimant is not disabled within the meaning of the Social Security Act.

(R. 38-40).

Baldwin disagrees and contends generally that the ALJ's opinion is not supported by substantial evidence in the record. Specifically, Baldwin challenges the ALJ's decision to

discredit her testimony as well as the opinion of a consultative psychologist, Robert A. Storjohann, Ph.D. She also contends the ALJ erred when evaluating her subjective complaints and her RFC. Finally, she challenges his decision that she did not meet the requirements for Listing 12.05.

### C. *Baldwin's Testimony and the ALJ's Evaluation of her Subjective Complaints*

As noted above, Baldwin's application paperwork reflects complaints of pain and swelling in her feet and abdomen that results secondarily in nausea to the extent that she is unable to stand for long periods of time, lift heavy weight or sleep well (R. 85, 94, 107, 110). She also complained of headaches and forgetfulness (R. 97, 108).

At her administrative hearing, Baldwin testified that the swelling of her feet and a "knot" in her stomach keep her from working (R. 364). These conditions, she testified, cause her pain that feels "[l]ike little needles sticking" (R. 364). The pain is "not that strong" and lasts only "[a]bout 10, 15 minutes" (R. 364). It occurs every day when she "stands too long," and her testimony further indicates that she defines "too long" as approximately ten minutes (R. 365).

As the ALJ noted, she testified that "[t]here are no precipitating or aggravating factors associated with the pain," and she takes medication that effectively controls the pain (R. 17, 365). The medication has no side effects. *Id.* When asked about her ability to stand or walk for any duration, she responded vaguely and was somewhat inconsistent and arguably uncooperative (R. 370).

8

Baldwin also testified regarding her forgetfulness and claimed to be unable to lift more than five pounds (R. 367-70). In addition, when questioned by her attorney, Baldwin claimed to hear a voice in her head that instructed her to remove baby dolls and stuffed animals from her bed, though the voice did not instruct her to hurt herself (R. 374). Baldwin's attorney also led her to testify that she suffers from panic attacks (R. 374-75).

The ALJ accurately described her relevant testimony as follows:

> Her health problems include a knot in her stomach and swelling in her feet. She has pain associated with her condition. The pain feels like needles sticking but it is not too strong. The pain lasts 10 to 15 minutes at a time and occurs daily. There are no precipitating or aggravating factors associated with the pain. She takes the following prescription medication: Clonodine, Lobaxin, and Toradol. The medications relieve the pain. The medications do not produce any side effects.

(R. 17).

The ALJ then concluded that Baldwin "has an underlying medically determinable impairment that could reasonably cause pain but not to the extent alleged" (R. 35). After discussing the applicable law, he continued:

> I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

9

(R. 36).

The court is troubled by the ALJ's specific assessment for a number of reasons and finds that it is not supported by substantial evidence in the record. Initially, the court doubts whether the pain Baldwin described—as opposed to the functional limitations she described—at her hearing could be considered disabling. She described the pain as "not very strong," temporary, and treatable with medications that had no side effects. While her description may well belie her assertions regarding the effect her pain has on her ability to function, whether her allegations of pain are supported by objective medical evidence is a separate question entirely.

As the ALJ correctly noted, the Eleventh Circuit Court of Appeals has established a test for initially evaluating a claimant's subjective symptoms. Essentially, this standard requires a claimant to establish

> through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be *considered in addition to the medical signs and laboratory findings in deciding the issue of disability.*

***Foote v. Chater***, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis added). Thus, satisfaction of the pain standard requires only that the ALJ *consider* the pain and any functional limitations resulting therefrom as factors weighing on the ultimate decision.

To satisfy the pain standard,

> the claimant must satisfy two parts of a three-part test showing:

10

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See* **Holt v. Sullivan**, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See* **Hale b. Bowen**, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See* **Cannon v. Bowen**, 858 F.2d 1541, 1545 (11th Cir. 1988).

**Wilson v. Barnhart**, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant case, at her hearing and on the relevant paperwork, Baldwin described (1) the pain she experiences and (2) the limitations caused by the pain. The ALJ concluded that Baldwin's descriptions were not supported by objective medical evidence in the record. The court concludes that the ALJ's opinion regarding both aspects of her testimony is not supported by the record, but for differing reasons.

His opinion regarding the pain she experiences is simply contradicted by the record, and her testimony on the subject must, in accordance with *Wilson,* be accepted as true. With respect to Baldwin's testimony regarding the effect(s) of the pain on her ability to function, the record before the ALJ was insufficient to allow him to make a reasoned decision and is thus insufficient to allow this court to review his conclusion.

Much of the medical evidence in the record, particularly the evidence indicative of physical impairments (as opposed to mental impairments), long precedes the time period relevant to Baldwin's case. Although the ALJ took a more holistic approach, he was not

11

required to do so, and the records of medical treatment prior to 2003 offer little insight into Baldwin's physical (again, as opposed to mental) condition after her alleged onset date. *See* 20 C.F.R. § 416.912(d)(2) ("If [the claimant] say[s] [her] disability began less than 12 months before [she] filed [her] application, [the Commissioner] will develop [her] complete medical history *beginning with the month* [*the claimant*] *say*[*s*] [*her*] *disability began* unless [the Commissioner] ha[s] reason to believe that [the] disability began earlier.") (emphasis added).

Unfortunately, the records of her medical treatment during the relevant time period offer little additional insight into Baldwin's conditions. The report of a consultative examiner, James Colley, M.D., is somewhat more helpful, however, as evidenced by the ALJ's decision to "give substantial weight to [his] opinion regarding [Baldwin's] functional abilities. His opinion is well supported by his own clinical examination and testing, and it is generally consistent with the record as a whole" (R. 32).

Dr. Colley examined Baldwin on 4 September 2003 and noted a "long upper midline surgical scar [that] . . . curves around the right side of the umbilicus down towards the pubic area. She has a large 10 x 12 cm hernia in the midline of the scar" (R. 259). He further noted that Baldwin had

> a wobbly gait while ambulating down the hall and in the exam room. . . . Heel to knee is poor. . . . She is unable to do heel to toe tandem walking. She gives good effort.
> \*\*\*
> She has increased sensitivity to the soles of the feet. . . . She has 2+ non-pitting edema on the dorsal surface of the foot and in the ankle area. She has a 6 x 6 cm hard mass on the left foot, which

>appears to be an enlarged callus formation, possibly from an old fracture, I am not sure. This is on the surface of the left foot.

(R. 59, 60).

Dr. Colley then provided the following diagnoses:

>1. Poorly controlled diabetes mellitus complicated by diabetic retinopathy, and neuropathy of the feet bilaterally. She has possible diabetic nephropathy.
>2. She has memory problems and this may also be a complication of diabetes mellitus. She may have small and large vessel intracranial disease.
>3. Stomach is most likely hurting her from the large incisional hernia that is obvious.

(R. 261).

The ALJ concluded that Baldwin had satisfied the first part of the pain standard test, and this decision is supported by substantial evidence in the record. However, Dr. Colley's report, on which the ALJ himself relied, unquestionably established the existence of conditions that could reasonably give rise to the treatable foot and abdomen pain Baldwin described.

Therefore, the ALJ's conclusion that the record did not support Baldwin's allegations of pain is itself not supported by substantial evidence in the record. Consequently, this case must be reversed and remanded for further evaluation; Baldwin's description of her foot and abdomen pain must be accepted as true; and the Commissioner must consider her relevant testimony in making another final decision.[3]

---

[3] This should not be construed as a finding regarding Baldwin's credibility or her statements regarding her functional limitations.

As noted, Baldwin also challenges the ALJ's conclusion regarding her subjective description of physical limitations caused by the pain she described.  Although Baldwin's argument is well taken, the court is unable to review the ALJ's opinion on this matter because the relevant evidence is lacking, and the Commissioner must therefore further develop the record.[4]

Dr. Colley's report and a report from a nonexamining physician provide the only evidence of Baldwin's functional limitations.  The ALJ did not discuss the weight accorded the opinion of the nonexamining physician, however, and it appears to conflict with Dr. Colley's report inasmuch as the report merely mentions Baldwin's hernia in passing and offers diagnoses that differ from Dr. Colley's (R. 281-88).  By not specifically assigning weight to the opinion of the nonexamining physician, the ALJ implicitly rejected it, and the court reviews the ALJ's opinion in conjunction with Dr. Colley's evaluation.

Dr. Colley assessed Baldwin's functional limitations as follows:

> The number of hours that the claimant could be expected to stand and walk in an eight-hour workday is limited due to diabetic neuropathy of the feet and the large incisional hernia.  She could stand or walk for a limited length of time.  She also does not wear glasses and she most likely has diabetic retinopathy and has very poor eyesight.  She could stand and walk for less than two hours.

---

[4]In so concluding, the court necessarily determines that the ALJ's assessment of Baldwin's RFC is similarly unreviewable.  Although Baldwin does not directly challenge this aspect of the Commissioner's decision, the court's concern for administrative and judicial resources compels it to highlight this shortfall.  It follows logically that a record that does not support an ALJ's evaluation of a claimant's subjective testimony regarding her functional limitations likewise does not support the ALJ's independent assessment of her functional limitations.

> The number of hours that the claimant could be expected to sit in an eight-hour workday is six hours due to the fact that the claimant has incisional hernia and would have to lie down from time to time. When the claimant sits or walks, she has a mass from the intraabdominal cavity protruding through the hernia.
>
> An assistive device is not applicable.
>
> The amount of weight the claimant should lift or carry is extremely small due to the incisional hernia as described above.
>
> She has postural limitations and bending, stooping, and crouching are limited due to the incisional hernia.
>
> She has no manipulative limitations. She has no other limitations noted.

(R. 261).

As the only apparently reliable evidence of Baldwin's physical functional limitations, Dr. Colley's functional assessment is in need of elaboration and clarification. The ALJ concluded that Baldwin could perform light work, but Dr. Colley's limitation on lifting suggests otherwise. *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds mat a time with frequent lifting or carrying of ojbects weighing up to 10 pounds.").[5] Without clarification from Dr. Colley regarding how he defines "extremely small weight," the court cannot determine whether the ALJ's relevant conclusions are supported

---

[5] The ALJ concluded alternatively that Baldwin was capable of performing a limited range of sedentary work. Without additional evidence regarding her lifting limitations, however, this conclusion is not supported by the record.

15

by evidence in the record.[6]

Similarly, the ALJ never expressly decided how long he felt Baldwin could sit or stand. He merely concluded that she would need to work at a job at which she could sit or stand at her discretion (R. 37). Dr. Colley concluded that she could only sit for six hours and stand or walk for less than two hours.[7] Perhaps most importantly, Dr. Colley concluded that Baldwin would need to lie down periodically, which the doctor did not further explain and which the ALJ failed to mention either to the Vocational Examiner at Baldwin's administrative hearing or in his assessment of her RFC. This must also be corrected.

Thus, the record must be further developed. At the very least, in accordance with 20 C.F.R. § 416.912(e)(1), Dr. Colley must be called upon again to provide verifiable explanations that address the issues this opinion has raised.

---

[6]The commissioner contends that the ALJ's decision is supported by examination reports indicating that Baldwin was of normal strength (Doc. # 16, p. 9). All but one of the examinations the Commissioner discusses, however, long preceded the relevant time period (Doc. # 16, p. 6-7). Dr. Colley provided the only other relevant opinion, but his lifting restriction must be viewed either as conflicting with his strength assessment or as indicative of a limitation stemming from something other than general weakness, such as pain. The ALJ's adoption of Dr. Colley's assessment as well as the government's failure to argue that Dr. Colley's opinion was somehow internally inconsistent compels the court to adopt the latter view.

[7]Dr. Colley's report contains two handwritten notations. The first appears to be a correction of sorts indicating that Baldwin could stand and walk less than "six hours cumulative" (R. 261). The second indicates that Baldwin could bend, stoop and crouch "up to 6 hrs." *Id.* Although the ALJ appears to have adopted these otherwise unattributed comments without question, the court is less inclined to do so without any indicia that Dr. Colley himself scribed the notes. Moreover, an opinion that she could stand and walk for less than six hours is completely consistent with an opinion that she could stand and walk less than two hours and could not reasonably be construed as establishing a lower limit to Baldwin's ability to stand and walk. Finally, in view of Dr. Colley's statements regarding Baldwin's hernia, the court finds it highly unlikely that he would conclude that she could bend, stoop and/or crouch for up to six hours in an eight-hour workday. These points require clarification.

Once a sufficient record is developed, the Commissioner must re-evaluate and explain any decision to discredit Baldwin's subjective allegations regarding her functional limitations, and she must reassess Baldwin's RFC. In addition to Baldwin's description of her pain and any new information obtained on remand, she must factor into her assessment Dr. Colley's conclusion that Baldwin would need to lie down periodically.

### D.     *Remaining Challenges*

Baldwin's remaining contentions are without merit. The record fully supports the ALJ's decision to reject the opinion of consultative psychologist Robert A. Storjohann, Ph.D. for the reasons the ALJ provided (R. 301). In addition, the relevant medical evidence indicates that Baldwin suffered only mild depression and performed at the borderline intelligence level as the ALJ concluded. (R. 192-97; 253-56).

### IV.     CONCLUSION

Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further proceedings in accordance with the directives set forth in this opinion.

DONE this 3rd day of August, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE